Turn to the last case on our calendar, Jeffrey Andrews et al. v. Wallingford, Inland Wetlands. Good morning. May it please the court, my name is Thomas Caton. I represent the appellants in this case. Jeffrey Andrews, Lynn Cook Andrews, Wesley Andrews, Colton Andrews, and Ellery Andrews. A lot of Andrews. A lot of Andrews. The case involves a family farm in the town of Wallingford, Connecticut. And although stated in a single issue, there really are two foci that I believe the court should consider here. Number one, under this circuit's standard of review on a 12C motion, is there enough pled to suggest that there are challenges made to Wallingford's regulatory scheme? And I don't use that term in a pejorative way. I mean it as a regimen, a regulatory structure controlling the situation. And two, if that were the case, that Andrews urge this court to expressly adopt the rule that's, we refer to it as the CUNY rule of the Sixth Circuit. It has been acknowledged by district courts within this circuit, but never commented on expressly by this court. Does Rooker-Feldman, that doctrine bar your claim? I do not- You had an adverse determination in the state court. The issue was never raised in the state court. No, I mean here, just when a federal court looks at proceedings in a state court. And in a state court proceeding, your clients were not successful. You're complaining or continuing to complain in federal court of the injuries that were the result of the state court's judgment, the injunction. And you are inviting us to now review the state court's judgment. I'm just getting to subject matter jurisdiction, whether the Rooker-Feldman doctrine does bar us from continuing it. I don't believe that the Rooker-Feldman doctrine would bar this claim. Because what we're essentially asking the court to do is a look forward as to a continuing constitutional violation that affects the Andrews liberty interest to farm the property. We're not asking for any sort of set aside or undermining of the decisions made by the superior court in the state of Connecticut. Well, if we were to grant the relief that this pond could stand and the farm could continue to utilize it, would it not be doing violence to the state court's decision? I don't believe so because there's nothing pending in terms of enforcing that state court decision. And anything that goes forward at this juncture would be the subject matter of any ruling by this court. So under our scope of review, we're to draw every inference in favor of the party against whom the motion is pending. In this case, I've cited in the brief, in paragraph three, specific references to the defendant's regulations violated the plaintiff's clearly established statutory as a right use of their land. And their constitutional right to pursue their farming occupation, rights, entitlements, and or interests of which any reasonable person should have been aware. And the regulations also were constitutionally informed, excuse me, in that the defendants and their regulatory scheme failed and refused to recognize the plaintiff's status in a class of persons legally entitled to use and operate a farm pond as of right. So there are explicit references to attacking the regulatory scheme. And that attack, essentially under the rubric of the Andrews Liberty Interest, involves whether or not the regulatory scheme or the regulatory regimen was sufficiently clear that reasonable persons would have realized that when a statute allows you an as of right use, the town is requiring you to come in and seek approval in an application for an as of right use. Counsel, maybe going back to Judge Matsumoto's question to you, how would you describe any state court proceedings that involve these matters? They were enforcement actions brought with respect to cease and desist orders issued by the Town of Longford and the Inland Wetlands Commission. And those questions went to the Superior Court? They went to the Superior Court. And what was the disposition there? Disposition was against the Andrews. So... Final decisions? Final decisions. So, to put it simply, you did not prevail in the state court, and now you're pursuing substantially similar claims in the federal court. There were no constitutional claims that were made, as far as I know, at the state court level. So I believe those claims would continue to exist. So why are the claims timely, assuming you're right? If the claims are viewed as a challenge to the regulatory scheme under the Cunley analysis, then I believe they are timely because each and every day that the Andrews suffer under the weight of this regulatory scheme, they incur a new constitutional injury. And under Cunley, there is this doesn't allow for an infinite look back in terms of what damages or what other relief may be obtained. It would be a look back period from the date the suit was filed here and the statute of limitations that is applicable, which is three years. But your clients were not injured until the cease and desist order, irrespective of when . . . 2009. The cease and desist order was in 2009, and I agree that under traditional accrual rules, if we were to say the point in time where you got hurt initially is the trigger, then the district court was correct in his analysis. The question is whether or not he was circumscribed in viewing the allegations of the complaint as to only challenges to the enforcement actions of the town, or whether or not the regulatory scheme that continues to burden the Andrews is sufficiently challenged in the complaint. I believe that the memorandum of decision from the district court focuses on the notion of enforcement actions and does not address the allegations of the complaint regarding a deficient regulatory scheme. Thank you. Thank you.  May it please the Court. Janice Small, I represent the town defendants in this matter. With respect to the Roker-Feldman Doctrine, I did look at that when this claim was first brought, and quite honestly, I kind of struggled with the various cases on it and what falls within it and what does not fall within it, and I did not raise it, and the district court did not raise it also. The interesting thing is about that doctrine because we brought an enforcement action for wetlands violations, which they claim were the as-of-right activity. They could not challenge the validity of their defense because they had not taken a proper appeal of the wetlands decision, which was their right. And so they were precluded from defending against the actual underlying decision of the commission. So in the one sense, they're raising these issues which were not before the trial court, the state trial court, but they were not before the state trial court because they didn't take their appeal. Could they have raised a constitutional challenge to the underlying regulations in their defense of the enforcement action? They actually argued to the appellate court at the state level that they, in fact, had brought a takings claim. I did not believe they brought a takings claim, but the appellate court said, well, even if you arguably did, the trial court in the state action did not, in fact, rule on that, and you didn't raise it properly with the trial court. So they had not properly preserved that issue. They had, instead of pleadings, they had a rambling, like a closing argument type statement, and saying that what we have done to them was a taking. So they did make a state court attempt to bring a constitutional claim. I'd also point out, had they properly appealed under the state wetlands statute, if the court determines that the commission acted properly, the court can actually consider whether, in fact, what the commission did amounted to a taking, and actually make a change to the decision based upon that. So they had these avenues, and they chose not to pursue them. So seven years later, after the underlying action occurs, they want to bring an action. I have no idea why they picked 2016. There's no explanation for that. But the discrete acts occurred in 2009. You don't know, and you don't wish to speculate. I mean, do you have some sense of why it would have surfaced? Were there some developments on the ground that would have triggered an interest in pursuing a federal remedy? The only thing that I know of is that there's a contempt citation running against them. But they don't even allege anything about the contempt citation. So that sits. But there is no action in 2016 that would explain why they chose that year. And the argument by the Andrews to the district court was, we can bring this claim any time we want. They can bring it 20 years from now. And that's not what CUNLI stands for, and that's not what the circuit ‑‑ I mean, you begin every discussion as to when statute of limitations begins to run with the question of when did the plaintiff know or have reason to know that they suffered an injury which was actionable by their own admission that begins in August of 2009. And CUNLI does not stand for the proposition that you can wait as many years as you wish and then bring a constitutional claim. You don't even get to CUNLI because we have discrete acts. Those are discrete acts, and this Court has been fairly consistent in saying, your statute of limitation begins with that discrete act. You can argue each one is a new statute of limitations, but you can't get to the continuing violation theory if you have discrete acts. And I'd point out in CUNLI the interesting fact that it didn't get a lot of discussion in the case, but I think it's important, is that action was brought within two years of the court's determination that the county's rule about traveling on these roads was illegal. So it was brought within two years, and the state, the county was arguing, you had to bring this action back when this regulation was enacted. And that's where all the discussion gets in, well, that's not really right. I'm not making any argument that they needed to challenge this back when these regulations were created. The whole argument is we have discrete acts in 2009, and the district court acted properly in determining that they were too late. They don't even allege that there is, they also need, not only if you have the continuing violation doctrine, you still need an act within three years of bringing it. Where is it? There isn't one. They don't allege any. So there's no way for them to get there other than to make this grand argument, we can bring it any time we want. That's it. That's the essence of their argument. I don't think this court, I'm not sure how this court really views Coonley. This isn't a Coonley case. We don't get there because of the discrete acts. And this court has never, I have not found any case where this court says, well, never mind the discrete acts. We're just going to ignore seven years ago all the acts that happened to you, which is where the harm took place. Everything that's followed has been nothing more than the effects of the alleged harm that occurred in 2009. And unless there are any questions. I think you've probably already addressed this, but I'm curious. Opposing counsel quotes some pretentious precedents of the Supreme Court and our court, and in one case from the Eastern District, let me just read you the passage that he provides at page three of his reply brief. The clock on any challenge to the constitutionality of a statute whose continued application works an ongoing constitutional violation starts to run anew every day that the statute applies. And that's not this case because we've had the discrete acts. Once they applied for the exemption, which they claimed they constitutionally did not have to do, so that's a discrete act that occurs. They then did apply for it. They want to argue that the actual application is a constitutional violation. There is a discrete act. And in December of 2009, that application is denied. There is the discrete act. The harm flows from that point in time. This court has not ruled in those circumstances that you have forever to bring an action. Thank you. Ms. Caton. Thank you. I must respectfully disagree with my colleague regarding her interpretation of the district court's memorandum of decision. It was twofold. It involved both discrete acts and, purportedly, allegations in the complaint regarding continuing future impacts of an arguably unconstitutional regulatory scheme. We recognize the court's ruling with respect to these discrete acts and the traditional accrual rule that applies to discrete acts. Our issue here, and again, the reason we urge formal adoption of a CUNY-type analysis, is that there is a continuing constitutional violation if these constitutional questions bear fruit and there's continuing injury going forward anew every day, that they are unable to exercise their rights to have an as-of-right farm pond. Thank you. Thank you very much. We'll reserve the decision, and we're adjourned. Court is adjourned.